## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **THE INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, et al.,** | * | |
| | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | **Civil Case No. JKB-23-1059** |
| **v.** | * | |
| **LETTERMEN SIGNAGE, INC.,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM

The International Painters and Allied Trades Industry Pension Fund (the "Fund") and its fiduciary, Terry Nelson, (collectively, "Plaintiffs"), filed this action against Lettermen Signage, Inc. ("Defendant"), seeking relief pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). (ECF No. 1.)  After the Clerk entered an Order of Default against Defendant, Plaintiffs filed the instant Motion for Default Judgment. (ECF Nos. 9, 11.)  Defendant has failed to respond to the Motion or to otherwise defend this action.  No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023); Fed. R. Civ. P. 55(b).  For the reasons set forth below, the Court will deny the Motion for Default Judgment without prejudice and direct Plaintiffs to amend their Complaint.

### I.     *Factual Background and Procedural History*

By its default, Defendant admits Plaintiffs' well-pleaded allegations.  *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).  Accordingly, the Court accepts the well-pleaded facts alleged in the Complaint as true.

The Fund is a multiemployer pension plan and a third-party beneficiary to collective bargaining agreements between Defendant and the District Council 14 Local Union 830 of the International Union of Painters and Allied Trades, AFL-CIO. (ECF No. 1 ¶¶ 4, 8.) The agreements require Defendant to submit contributions to the Fund for work performed by the Fund's employees. (*Id.* ¶ 9.) On October 3, 2022, the Fund mailed Defendant a letter to inform Defendant of the Fund's determination that Defendant withdrew from the Fund in 2020. (*Id.* ¶¶ 11–12.) The letter stated that the Fund calculated Defendant's withdrawal liability to equal $349,914.00, which was payable in a lump sum or in 175 monthly payments of $3,122.00 and a final payment of $204.00. (*Id.* ¶ 12.) The letter demanded that Defendant remit payment on or before December 5, 2022. (*Id.*) After Defendant failed to remit payment, the Fund mailed a "Cure Letter" to Defendant, directing it to remedy its delinquency and begin making payments within sixty days. (*Id.* ¶¶ 15–17.) Defendant failed to cure its delinquency. (*Id.* ¶ 21.)

Plaintiffs then commenced the instant case to collect "[a]ll past due and future withdrawal liability payments under the Payment Schedule." (*Id.* at 6.) After Defendant failed to answer the Complaint, the Clerk entered an Order of Default. (ECF No. 9.) Plaintiffs then filed the instant Motion for Default Judgment in which they request $575,264.33. (ECF No. 11-2 at 2.) This figure represents the outstanding amount of Defendant's withdrawal liability, interest, liquidated damages, attorneys' fees, costs, and "additional interest at the rate of $8.72 per day from November 14, 2023 until the date the Court enters judgment." (*Id.*)

## II.   *Legal Standards*

### A.   *Default Judgment*

To determine whether a default judgment is warranted, the Court must evaluate "whether the well-pleaded allegations in [the] complaint support the relief sought in [the] action." *Ryan v.*

2

*Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  To do so, the Court applies the standards articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007).  *See Vasquez-Padilla v. Medco Props., LLC*, Civ. No. PX-16-3740, 2017 WL 4747063, at \*2 (D. Md. Oct. 20, 2017) (collecting cases).

### B.    Withdrawal Liability

ERISA ensures that employees are not "deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 214 (1986).  Relevant to this case, ERISA governs the funding and administration of "multiemployer" plans in which employers contribute to a single fund that benefits retirees who have worked for one or more employers. *See UFCW v. SuperValu Inc.*, 647 F. Supp. 3d 396, 398 (D. Md. 2022).

Employers sometimes withdraw from a multiemployer plan and thereby endanger the plan's long-term solvency. *See id.*  To mitigate this risk, ERISA requires withdrawing employers to pay their share of a plan's unfunded and vested benefits. *See Penske Logistics LLC v. Freight Drivers & Helpers Local Union No. 557 Pension Fund*, 820 F. App'x 179, 181 (4th Cir. 2020) (per curiam).  That share is known as the employer's "withdrawal liability." 29 U.S.C. § 1381. The Supreme Court has explained the procedure for collecting withdrawal liability thusly:

> The employer must, at the least, make a series of periodic payments toward [its] total liability. Payments are set at a level that approximates the periodic contributions the employer had made before withdrawing from the plan. . . . [T]he employer may prepay the outstanding principal, plus accrued interest, at any time.
>
> [ERISA directs] trustees [to] set an installment schedule and demand payment[.] On receipt of the trustees' schedule and payment demand, the employer may invoke a dispute-resolution procedure that involves reconsideration by the trustees and, ultimately, arbitration. . . . Even if the employer challenges the trustees' withdrawal liability determination, . . . it still must pay according to the trustees' schedule[.]

3

*Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp.*, 522 U.S. 192, 196–97 (1997) (internal citations and quotation marks omitted).

Generally, disputes over withdrawal liability must be resolved through arbitration. *See* 29 U.S.C. § 1401(a)(1). However, "[i]f no arbitration proceeding has been initiated," the plan may bring a civil action to collect the amount "due and owing on the schedule set forth by the plan sponsor." *Id.* § 1401(b)(1). If a judgment is awarded in the plan's favor, a court must award the plan: (1) "the unpaid contributions," with interest; (2) "an amount equal to the greater of" interest on the unpaid contributions or liquidated damages in an amount not exceeding twenty percent of the unpaid contributions; and (3) reasonable attorneys' fees and costs. *Id.* § 1132(g)(2).

ERISA also permits a plan to "require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." *Id.* § 1399(c)(5). This scenario, termed "default," can occur only when: (1) an employer fails "to make, when due, any payment[,] if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure" and (2) an event occurs which is "defined in rules adopted by the plan [and] which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability."[1] *Id.* Although a plan "has the option to accelerate and collect the entire debt if the employer defaults," it has "no right, absent default and acceleration, to sue to collect payments before they are due, and it has no obligation to accelerate on default." *Bay Area Laundry*, 522 U.S. at 208, 210.

---

[1] The Pension Benefit Guaranty Corporation has promulgated a rule that further confines the scope of default by providing that default may not occur until: "the 61st day after the last of . . . (i) [e]xpiration of the period described in section 4219(b)(2)(A) of ERISA; (ii) [i]f the employer requests review[,] expiration of the period described in section 4221(a)(1) of ERISA . . . ; or (iii) [i]f arbitration is timely initiated[,] issuance of the arbitrator's decision." 29 C.F.R. § 4219.31(c)(1).

4

### III.   Analysis

The Court's initial task is to determine whether the Complaint's well-pleaded allegations support the relief sought. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). To state a claim for withdrawal liability under ERISA, Plaintiffs must allege that: (1) Defendant was required to contribute to a multiemployer plan; (2) Defendant withdrew from that plan; (3) Defendant was presented with a demand for withdrawal-liability payments; (4) Defendant failed to make certain payments when due; and (5) Defendant did not initiate arbitration. *See Demopoulous v. Sweet Clover Farms Inc.*, Civ. No. 17-7269-ARR-CLP, 2019 WL 13470576, at *4 (E.D.N.Y. Mar. 7, 2019).

Here, Plaintiffs allege that: (1) Defendant is obligated to contribute to the Fund; (2) Defendant withdrew from the Fund; (3) the Fund demanded payment under a schedule; and (4) Defendant failed to remit payment under that schedule. (ECF No. 1 ¶¶ 9, 12, 15–21.) Plaintiffs have therefore adequately alleged the bulk of their claim.

However, the Complaint does not fully support the claim. With respect to withdrawal liability, courts "have been consistent in their conclusion that '[a]rbitrate first' is indeed a rule Congress stated unequivocally." *Tsareff v. ManWeb Servs.*, 794 F.3d 841, 850 (7th Cir. 2015) (alteration in original) (quoting *Robbins v. Admiral Merchs. Motor Freight, Inc.*, 846 F.2d 1054, 1056 (7th Cir. 1988)). Here, Plaintiffs do not state whether Defendant invoked its right to arbitrate this matter pursuant to 29 U.S.C. § 1401(a)(1), so their withdrawal-liability claim is not adequately pleaded.[2] *See Demopoulous*, 2019 WL 13470576, at *4.

---

[2] The Complaint contains one reference to arbitration: an acknowledgment that "the period to initiate arbitration has not expired." (ECF No. 1 ¶ 24.) Other filings contain vague references to arbitration. For instance, attachments to the instant Motion refer to an "arbitration demand" and to emails concerning "arbitrator selection" and "appointment." (ECF No. 11-9 at 15, 18.) Due to these references and the Complaint's ambiguity on the issue, it is unclear whether the parties are, or were, engaged in arbitration.

When a complaint is found inadequate at the default judgment stage and it has not yet been amended, the Court must grant leave to amend if the complaint's deficiencies are remediable. *See United Source One, Inc. v. Frank*, No. 23-1481, 2024 WL 1108824, at *1 (4th Cir. Mar. 14, 2024) (per curiam). The Court finds that Plaintiffs' failure to address the arbitration issue "could conceivably be remedied" through amendment, so it will deny Plaintiffs' Motion without prejudice and direct Plaintiffs to amend their Complaint.[3] *Id.*

Because amendment is deemed necessary, the Court concludes its analysis by identifying one other issue in the Complaint. Therein, Plaintiffs state that they are "unable to hold Defendant Lettermen in 'default' under 29 U.S.C. § 1399(c)(5) by virtue of the corresponding regulations at 29 C.F.R. § 4219.31(c)(1)(ii)." (ECF No. 1 ¶ 24.) Accordingly, they assert that this action "is limited to enforcing the Payment Schedule[.]" (*Id.*) By contrast, Plaintiffs assert in their Motion that Defendant "is in default to the Fund for the entire amount of withdrawal liability" and, accordingly, they request $546,554.00, a figure that reflects the sum of 175 monthly payments of $3,122.00 and a final payment of $204.00. (ECF No. 11-2 at 3, 8.)

Because Plaintiffs have not pleaded facts showing that the accelerated balance of withdrawal liability is "due," they have failed to establish Defendant's liability for the accelerated balance pursuant to 29 U.S.C. § 1399(c)(5) and 29 C.F.R. § 4219.31(c)(1). *Demopoulous*, 2019 WL 13470576, at *4. Consequently, the Complaint's allegations do not entitle Plaintiffs to a judgment for the accelerated balance.[4] *See Ryan*, 253 F.3d at 780.

---

[3] Because the Court does not enter "a judgment in favor of" the Fund at this time, the Court does not consider Plaintiffs' requests for attorneys' fees and costs. 29 U.S.C. § 1132(g)(2).

[4] Even if default were properly alleged, the Court would reach the same conclusion. The Complaint delimits this action to the collection of overdue payments and expressly excludes the prospect of accelerating Defendant's debt. (ECF No. 1 ¶ 24.) This prevents the Court from awarding the accelerated balance of Defendant's withdrawal liability because a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

If Plaintiffs' request for withdrawal-liability damages were confined to the sum of Defendant's overdue payments, the failure to allege default would not be an issue: Plaintiffs clearly allege that Defendant "has not made five (5) payments under the Payment Schedule for a principal deficiency of $15,560." (ECF No. 1 ¶ 21.) However, Plaintiffs have moved for a judgment that differs from the sum of overdue payments and their pleading does not support such a judgment. If Plaintiffs wish to accelerate Defendant's debt, their amended pleading must reflect this intention and must also allege facts showing that the preconditions for default, set forth at 29 U.S.C. § 1399(c)(5) and 29 C.F.R. § 4219.31(c)(1), are met.

### IV.    *Conclusion*

For the reasons stated above, a separate Order shall issue denying Plaintiffs' Motion for Default Judgment without prejudice and directing Plaintiffs to amend the Complaint.[5]

DATED this ___6___ day of June, 2024.

BY THE COURT:

James K. Bredar
United States District Judge

---

[5] The Court reminds Plaintiffs that, "when a plaintiff seeks to serve an amended complaint that alleges new claims on a defendant who has not appeared, the combination of Rules 4 and 5 require a summons to be served together with a copy of the amended complaint." *Anunciation v. W. Cap. Fin. Servs. Corp.*, No. 95-15845, 1996 WL 534049, at *2 (9th Cir. Sept. 19, 1996) (citing *Fluor Eng'rs & Constructors, Inc. v. S. Pac. Transp. Co.*, 753 F.2d 444, 449 n.7 (5th Cir.1985)); *see also Bodied by Bella Boutique LLC v. Bodyed by Bella LLC*, 2023 WL 356238, at *4 (D. Utah Jan. 23, 2023) (explaining that a "new claim for relief" is pleaded when "the demand for judgment is altered, [when] the amount of damages sought is increased, [or when] new facts are incorporated") (footnotes omitted) (collecting cases).