IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

INTERNATIONAL PAINTERS AND  \*
ALLIED TRADES INDUSTRY PENSION
FUND, et al.,                           \*

    **Plaintiffs,**

v.                                               \*          CIVIL NO. JKB-23-1059

LETTERMEN SIGNAGE, INC., et al.,    \*

    **Defendants.**                    \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM AND ORDER

Plaintiffs International Painters and Allied Trades Industry Pension Fund (the "Fund") and Daniel Williams, in his official capacity as a fiduciary, brought suit against Defendants Lettermen Signage, Inc. ("Lettermen"), Hansen Ventures, Ltd. ("Hansen Ventures"), and Lawrence Hansen in his capacity as Trustee of the Lawrence John Hansen Trust ("the Trust"). (ECF No. 14.) Plaintiffs filed suit "pursuant to the Employee Retirement Income Security Act of 1974 ('ERISA'), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ('MPPAA'), for the collection of withdrawal liability and additional statutory damages." (*Id.* ¶ 1.) Pending before the Court is Plaintiffs' Motion for Default Judgment against Lettermen and Hansen Ventures. (ECF No. 51.)[1] The Court will deny the Motion without prejudice.

### I.  Facts

The Fund is a "a multiemployer employee benefit pension plan within the meaning [of] 29 U.S.C. §§ 1002(3), 1002(37), and 1301(a)(3), that has been established pursuant to 29 U.S.C.

---

[1] Plaintiffs filed a consent motion to dismiss claims against the Trust, which the Court granted. Thus, Lettermen and Hansen Ventures are the only remaining defendants.

§ 186(c)(5)." (ECF No. 14 ¶ 4.) And "[t]he Fund was a third-party beneficiary to collective bargaining agreements between Defendant Lettermen and District Council 14 Local Union 830 of the International Union of Painters and Allied Trades, AFL-CIO (the 'CBAs')." (*Id.* ¶ 12.) Pursuant to the CBAs, Lettermen was required to remit contributions to the Fund for work performed by its employees. (*Id.* ¶ 13.)

During the relevant period, "Mr. Hansen's ownership of Defendants Letterman and Hansen Ventures was at least 80%, and his minimum ownership for each Defendant was at least greater than 50%." (*Id.* ¶ 40.) Plaintiffs allege that, due to this common ownership, "Letterman and Hansen Ventures constitute trades or businesses under common control pursuant [to] 29 U.S.C. § 1301(b)(1) and the related regulations, 29 C.F.R. § 4001.3(a)(1) and 26 C.F.R. §§ 1.414(c)-4(b)(3), 1.414(c)-2." (*Id.* ¶ 41.)

Lettermen "completely withdrew from the Fund within the meaning of 29 U.S.C. § 1383 during the 2020 plan year" and, on October 3, 2022, the Fund send a demand letter to Lettermen, in accordance with 29 U.S.C. §§ 1382 and 1399(b)(1). (*Id.* ¶¶ 14–16.) The demand letter explained that Lettermen withdrew from the Fund in 2020, that the amount of withdrawal liability was $349,914, that the payment could either be made by lump sum or by 175 equal monthly payments, and that payment was due by December 5, 2022. (*Id.* ¶ 16.) Lettermen responded with a "Request for Review, [in which it] asserted that it is exempt from withdrawal liability under 29 [U.S.C.] § 1383(b) (the 'Building and Construction Exemption')." (*Id.* ¶ 18.)

Lettermen did not make any payment by the date required by the demand letter and by 29 U.S.C. § 1399(c)(2) ("also known as ERISA's 'pay now, dispute later' rule"). (*Id.* ¶ 19.) On December 13, 2022, the Fund sent Lettermen a cure letter pursuant to 29 U.S.C. § 1399(c)(5)(A),

2

which notified Lettermen of its failure to make the payments and directed Lettermen to cure the delinquency. (*Id.* ¶ 21.) Lettermen did not cure the delinquency. (*Id.* ¶ 22.)

The Fund also sent a letter on April 6, 2023, responding to the Request for Review, and denying Lettermen's invocation of the Building and Construction Exemption. (*Id.* ¶¶ 23–24.) On April 27, 2023—after this suit was filed—Hansen, on behalf of Lettermen, requested arbitration pursuant to 29 U.S.C. § 1401. (*Id.* ¶ 29.) The arbitration process was halted due to Lettermen's claim that it could not afford attorney or arbitrator fees. (*Id.* ¶ 32.)

At the time that Plaintiffs filed the Amended Complaint, "nineteen (19) payments under the Payment Schedule have been missed for a principal deficiency of $59,318." (*Id.* ¶ 36.) Plaintiffs averred that "[t]hese amounts will continue to increase until the underlying missed payments to the Fund are made or until the Court enters judgment, and the responsible party will continue to owe additional payments and statutory damages for all future missed payments under the Payment Schedule. Accordingly, the Fund expressly reserves its right to collect all such additional amounts that become due and owing between now and the entry of the Court's judgment." (*Id.* ¶ 38.)

The procedural history of this case is somewhat lengthy. As relevant for the pending Motion for Default Judgment, Plaintiffs served Lettermen and Hansen Ventures, and they have not filed any answer. Plaintiffs filed Motions for Clerk's Entry of Default as to those Defendants, which were granted. (ECF Nos. 31–34.) Plaintiffs now move for default judgment. (ECF No. 51.)[2]

---

[2] The third Defendant, Mr. Hansen, has been dismissed from this case. (ECF Nos. 47, 49.)

## *II.   Standard*

After entry of default under Rule 55(a), a party may move for default judgment. Fed. R. Civ. P. 55(b)(2). Entry of default against a defendant does not alone entitle a plaintiff to judgment as of right:

> "The defendant, by [its] default, admits the plaintiff's well-pleaded allegations of fact . . . [but] is not held . . . to admit conclusions of law. In short, . . . a default is not treated as an absolute confession by the defendant of [its] liability and of the plaintiff's right to recover." The court must . . . determine whether the [conceded facts] support the relief sought in [the] action.

*Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "In the Fourth Circuit, district courts analyzing default judgments have applied the standards articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations within the complaint are 'well-pleaded.'" *Vasquez-Padilla v. Medco Properties, LLC*, Civ. No. PX-16-3740, 2017 WL 4747063, at *2 (D. Md. Oct. 20, 2017) (collecting cases). "Where a complaint offers only 'labels and conclusions' or 'naked assertion[s] devoid of further factual enhancement,' the allegations therein are not well-pleaded and, consistent with the Court's discretion to grant default judgment, relief should be denied." *Id.*

## *III.  Analysis*

For the reasons set forth below, the pending Motion will be denied without prejudice.

### A.   Liability

"Multiemployer pension plans, structured in accordance with ERISA, provide for the pooling of contributions and liabilities." *Penske Logistics LLC v. Freight Drivers & Helpers Loc. Union No. 557 Pension Fund*, 820 F. App'x 179, 181 (4th Cir. 2020). And, "Congress in 1980

4

passed the Multiemployer Pension Plan Amendments Act (the 'MPPAA')," which "requires that an employer withdrawing from a multiemployer pension plan pay a fixed and certain debt to the pension plan." *Trs. of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 440 (4th Cir. 2015) (internal quotation marks and citations omitted). "This withdrawal liability is the employer's proportionate share of the plan's 'unfunded vested benefits,' calculated as the difference between the present value of vested benefits and the current value of the plan's assets." *Id.* (internal quotation marks and citations omitted). A "complete withdrawal from a multiemployer plan occurs when an employer (1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a).

Under the MPPAA, "[w]hen an employer withdraws, the benefit plan's sponsor . . . determines the amount of the employer's withdrawal liability, devises a payment schedule, gives notice to the employer and demands payment." *Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Va. Pension Fund*, 718 F.2d 628, 632 (4th Cir. 1983) (citing 29 U.S.C. §§ 1382, 1399). Further, "[i]f the employer disputes either the fact or the amount of its liability, it has the right to negotiate the matter with the plan's sponsor . . . and if it is unsuccessful, it (as well as the plan's sponsor) has the right to invoke arbitration." *Id.* (citing 29 U.S.C. §§ 1399(b)(2)(A), 1401(a)).

If the employer does not dispute the amount, "the amount assessed by the plan sponsor as withdrawal liability 'shall be due and owing on the schedule set forth by the plan sponsor,' which may then 'bring an action in a State or Federal court of competent jurisdiction for collection.'" *Plumbing Servs.*, 791 F.3d at 441 (citing 29 U.S.C. § 1401(b)(1)). And "[i]n such a circumstance, an employer is deemed to have waived review of all issues concerning the determination of withdrawal liability." *Id.*

5

A "default" is the "the failure of an employer to make, when due, [withdrawal liability payments], if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure." 29 U.S.C. § 1399(c)(5)(A). And, "[i]n the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." *Id.*

"To state a claim for withdrawal liability under ERISA, Plaintiffs must allege that: (1) Defendant was required to contribute to a multiemployer plan; (2) Defendant withdrew from that plan; (3) Defendant was presented with a demand for withdrawal-liability payments; (4) Defendant failed to make certain payments when due; and (5) Defendant did not initiate arbitration." *Int'l Painters & Allied Trades Indus. Pension Fund v. Lettermen Signage, Inc.*, Civ. No. JKB-23-1059, 2024 WL 2882178, at *3 (D. Md. June 7, 2024).

Plaintiffs' Amended Complaint states:

> Because Defendant Lettermen initiated arbitration, and Plaintiffs are uncertain as to the ability of Defendants Hansen Ventures and/or LJH Trust to pay the assessed withdrawal liability, the Fund is unable to hold Defendants in "default" and accelerate the outstanding amount of withdrawal liability under 29 U.S.C. § 1399(c)(5)(A) or (B) by virtue of the corresponding regulations at 29 C.F.R. § 4219.31(c)(1). Accordingly, at present, this action remains limited to enforcing the Payment Schedule pursuant to MPPAA's "pay now, dispute later" rule at 29 U.S.C. §§ 1399(c)(2), 1401(d), and 1451(b).

(ECF No. 14 ¶ 46.) However, in their briefing, Plaintiffs do not address how Defendants' dispute of the amount due and their initiation of arbitration affects this case at this stage, and cites to no case law on the topic. Any renewed motion must explain why—with citation to authority—Defendants are liable despite the initiation of arbitration, and why Defendants are liable for the full amount.

6

B. **Damages & Fees**

In an action such as this one where judgment is awarded in favor of the plan, "the court *shall* award the plan" the following:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>      (i) interest on the unpaid contributions, or
>      (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2) (emphasis added). Thus, to the extent Plaintiffs are successful upon a renewed motion, they would be entitled to the above-listed categories. However, the pending Motion is deficient with respect to the requested damages and fees.

With respect to the unpaid contributions, as discussed above, Plaintiffs must provide authority for the proposition that they are entitled to the full withdrawal liability given that Defendants did apparently at least attempt to initiate arbitration.

With respect to the interest, "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g)(2). The Fund's Rules and Regulations simply provide that interest accrues "at the rate for underpayment of federal income taxes under IRC 6621." (ECF No. 51-3 at 22.) A declaration from Michael O'Malley, the Audit and Collections Director for the Fund, explains that the interest is $57,165.40 through May 30, 2025. (ECF No. 51-4.) However, he does not explain how he arrived at this figure. (*See generally id.*) He explains only that he "calculated the interest owed pursuant to Section 11.24(f) of the Fund's Rules and Regulations to total $57,165.40 through

May 30, 2025" and attaches a document that provides no insight into how this amount was calculated. (*Id.*) This Court recently explained—in this same scenario, with this same Plaintiff, and in the face of a similar declaration from Mr. O'Malley—"[t]he Court simply cannot countenance such slipshod calculations of damages." *Int'l Painters & Allied Trades Indus. Pension Fund v. Temp-Tech Indus., Inc.*, Civ. No. JKB-25-0056, 2025 WL 1383193, at *3 (D. Md. May 13, 2025) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. Gordon Sign Co., LLC*, Civ. No. 24-0096-BAH, 2025 WL 660210, at *4 (D. Md. Feb. 28, 2025)). To the extent Plaintiffs renew their motion, they must provide a more detailed explanation as to how they arrived at the requested interest figure.

To the extent that Plaintiffs are successful upon a renewed motion, they would also be entitled to an award of reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2)(D). Plaintiffs currently seek fees and expenses totaling $34,383.50. As the Fourth Circuit has explained:

> 29 U.S.C. § 1132(g) authorizes district courts to allow "a reasonable attorney's fee" in "any action under [ERISA]." 29 U.S.C. § 1132(g)(1) (2002). While the word "action" need not necessarily mean litigation in district court, *see Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559–61 (1986), here we agree with our sister circuits that have held ERISA attorney's fees to be categorically unavailable for expenses incurred while exhausting administrative remedies. *See Cann v. Carpenters' Pension Trust Fund for N. Cal.*, 989 F.2d 313, 316 (9th Cir.1993) ("We construe [§ 1132(g)(1)] as limiting the award to fees incurred in the litigation in court."); *Anderson v. Procter & Gamble Co.*, 220 F.3d 449, 455 (6th Cir.2000) ("[Section] 1132(g)(1) should not be interpreted to permit fee awards for legal expenses incurred in the course of exhausting administrative remedies.").

*Rego v. Westvaco Corp.*, 319 F.3d 140, 150 (4th Cir. 2003). And while "district courts have not applied *Rego*'s limitation on fee awards in ERISA cases in a way to exclude all pre-litigation fees and costs," certain prelitigation work may not appropriately fall within the scope of a fee award under 29 U.S.C. § 1132(g). *Int'l Painters & Allied Trades Indus. Fund v. Interiors by Steve, Inc.*, Civ. No. JRR-21-229, 2023 WL 4446572, at *8–9 (D. Md. July 11, 2023) (ultimately concluding

8

that "prelitigation work on the assessment of withdrawal liability in this case and efforts to collect withdrawal liability" should not be included in the fee award).

This action was filed on April 19, 2023, but the invoices provided by counsel reflect work dating back to November 2022, and much of the early work relates to demand and cure letters. (*See* ECF No. 51-8.) Plaintiffs have not addressed this issue in their briefing, and will be directed to explain why all of the requested fees are recoverable, or to revise their fee request. This, again, is an issue that the Court has previously flagged with these Plaintiffs. *See Int'l Painters & Allied Trades Indus. Pension Fund v. Temp-Tech Indus., Inc.*, 2025 WL 1383193, at *4. Plaintiffs are advised to more carefully tailor their request for fees in any renewed motion, and in the future.

## IV. Conclusion

For the foregoing reasons, it is ORDERED that:

1. The Motion for Default Judgment (ECF No. 51) is DENIED without prejudice.
2. To the extent Plaintiffs seek to renew their Motion, they are DIRECTED to do so by September 4, 2025.

DATED this 20 day of August, 2025.

BY THE COURT:

_____
James K. Bredar
United States District Judge

9