## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, et al., | * | |
| | * | |
| Plaintiffs, | | |
| v. | * | CIVIL NO. JKB-23-1059 |
| LETTERMEN SIGNAGE, INC., et al., | * | |
| Defendants. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### MEMORANDUM

Plaintiffs International Painters and Allied Trades Industry Pension Fund (the "Fund") and Daniel Williams, in his official capacity as a fiduciary, brought suit against Defendants Lettermen Signage, Inc. ("Lettermen"), Hansen Ventures, Ltd. ("Hansen Ventures"), and Lawrence Hansen in his capacity as Trustee of the Lawrence John Hansen Trust ("the Trust"). (ECF No. 14.) Plaintiffs filed suit "pursuant to the Employee Retirement Income Security Act of 1974 ('ERISA'), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ('MPPAA'), for the collection of withdrawal liability and additional statutory damages." (*Id.* ¶ 1.)

Pending before the Court is Plaintiffs' Motion for Default Judgment against Lettermen and Hansen Ventures. (ECF No. 53.)[1] The Court will grant Plaintiffs' request for default judgment, and will grant in part Plaintiffs' requested relief.

### I.    *Facts*

The Fund is a "a multiemployer employee benefit pension plan within the meaning [of] 29

---

[1] Plaintiffs filed a consent motion to dismiss claims against the Trust, which the Court granted. Thus, Lettermen and Hansen Ventures are the only remaining defendants.

U.S.C. §§ 1002(3), 1002(37), and 1301(a)(3), that has been established pursuant to 29 U.S.C. § 186(c)(5)." (ECF No. 14 ¶ 4.) And "[t]he Fund was a third-party beneficiary to collective bargaining agreements between Defendant Lettermen and District Council 14 Local Union 830 of the International Union of Painters and Allied Trades, AFL-CIO (the 'CBAs')." (*Id.* ¶ 12.) Pursuant to the CBAs, Lettermen was required to remit contributions to the Fund for work performed by its employees. (*Id.* ¶ 13.) During the relevant period, "Mr. Hansen's ownership of Defendants Letterm[e]n and Hansen Ventures was at least 80%, and his minimum ownership for each Defendant was at least greater than 50%." (*Id.* ¶ 40.) Plaintiffs allege that, due to this common ownership, "Letterm[e]n and Hansen Ventures constitute trades or businesses under common control" under the relevant statute and regulations. (*Id.* ¶ 41.)

Lettermen "completely withdrew from the Fund within the meaning of 29 U.S.C. § 1383 during the 2020 plan year" and, on October 3, 2022, the Fund sent a demand letter to Lettermen, in accordance with 29 U.S.C. §§ 1382 and 1399(b)(1). (*Id.* ¶¶ 14–16.) The demand letter explained that Lettermen withdrew from the Fund in 2020, that the amount of withdrawal liability was $349,914.00, that the payment could either be made by lump sum or by 175 equal monthly payments, and that payment was due by December 5, 2022. (*Id.* ¶ 16.) Lettermen responded with a "Request for Review, [in which it] asserted that it is exempt from withdrawal liability under 29 [U.S.C.] § 1383(b) (the 'Building and Construction Exemption')." (*Id.* ¶ 18.)

Lettermen did not make any payments by the date required by the demand letter and by 29 U.S.C. § 1399(c)(2) ("also known as ERISA's 'pay now, dispute later' rule"). (*Id.* ¶ 19.) On December 13, 2022, the Fund sent Lettermen a cure letter pursuant to 29 U.S.C. § 1399(c)(5)(A), which notified Lettermen of its failure to make the payments and directed Lettermen to cure the delinquency. (*Id.* ¶ 21.) Lettermen did not cure the delinquency. (*Id.* ¶ 22.)

2

The Fund also sent a letter on April 6, 2023, responding to the Request for Review, and denying Lettermen's invocation of the Building and Construction Exemption. (*Id.* ¶¶ 23–24.) On April 27, 2023—after this suit was filed—Mr. Hansen, on behalf of Lettermen, requested arbitration pursuant to 29 U.S.C. § 1401. (*Id.* ¶ 29.) The arbitration process was halted due to Lettermen's claim that it could not afford attorney or arbitrator fees. (*Id.* ¶ 32.)

At the time that Plaintiffs filed the Amended Complaint, "nineteen (19) payments under the Payment Schedule have been missed for a principal deficiency of $59,318." (*Id.* ¶ 36.) Plaintiffs averred that "[t]hese amounts will continue to increase until the underlying missed payments to the Fund are made or until the Court enters judgment, and the responsible party will continue to owe additional payments and statutory damages for all future missed payments under the Payment Schedule. Accordingly, the Fund expressly reserves its right to collect all such additional amounts that become due and owing between now and the entry of the Court's judgment." (*Id.* ¶ 38.)

The procedural history of this case is somewhat lengthy. As relevant for the pending Motion for Default Judgment, Plaintiffs served Lettermen and Hansen Ventures, and they have not filed any answer. Plaintiffs filed Motions for Clerk's Entry of Default as to those Defendants, which were granted. (ECF Nos. 31–34.) Plaintiffs moved for default judgment. (ECF No. 51.) Plaintiffs' briefing was insufficient, and the Court denied the initial Motion for Default Judgment. (ECF No. 52.) Plaintiffs have filed a renewed Motion. (ECF Nos. 53, 54.)

**II.    *Standard of Review***

After entry of default under Rule 55(a), a party may move for default judgment. Fed. R. Civ. P. 55(b)(2). Entry of default against a defendant does not alone entitle a plaintiff to judgment as of right:

3

"The defendant, by [its] default, admits the plaintiff's well-pleaded allegations of fact . . . [but] is not held . . . to admit conclusions of law. In short, . . . a default is not treated as an absolute confession by the defendant of [its] liability and of the plaintiff's right to recover." The court must . . . determine whether the [conceded facts] support the relief sought in [the] action.

*Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "In the Fourth Circuit, district courts analyzing default judgments have applied the standards articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations within the complaint are 'well-pleaded.'" *Vasquez-Padilla v. Medco Properties, LLC*, Civ. No. PX-16-3740, 2017 WL 4747063, at *2 (D. Md. Oct. 20, 2017) (collecting cases). "Where a complaint offers only 'labels and conclusions' or 'naked assertion[s] devoid of further factual enhancement,' the allegations therein are not well-pleaded and, consistent with the Court's discretion to grant default judgment, relief should be denied." *Id.*

### III.    Analysis

For the reasons set forth below, the pending Motion will be granted in part as follows.

#### A.    Liability

Plaintiffs seek to hold Lettermen and Hansen Ventures jointly and severally liable for the entire withdrawal liability, in the amount of $349,914.00.

"Multiemployer pension plans, structured in accordance with ERISA, provide for the pooling of contributions and liabilities." *Penske Logistics LLC v. Freight Drivers & Helpers Loc. Union No. 557 Pension Fund*, 820 F. App'x 179, 181 (4th Cir. 2020). And, "Congress in 1980 passed the Multiemployer Pension Plan Amendments Act (the 'MPPAA')," which "requires that an employer withdrawing from a multiemployer pension plan pay a fixed and certain debt to the

pension plan." *Trs. of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791

F.3d 436, 440 (4th Cir. 2015) (internal quotation marks and citations omitted). "This withdrawal

liability is the employer's proportionate share of the plan's 'unfunded vested benefits,' calculated

as the difference between the present value of vested benefits and the current value of the plan's

assets." *Id.* (internal quotation marks and citations omitted). A "complete withdrawal from a

multiemployer plan occurs when an employer (1) permanently ceases to have an obligation to

contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29

U.S.C. § 1383(a).

Under the MPPAA, "[w]hen an employer withdraws, the benefit plan's sponsor . . .

determines the amount of the employer's withdrawal liability, devises a payment schedule, gives

notice to the employer and demands payment." *Republic Indus., Inc. v. Teamsters Joint Council

No. 83 of Va. Pension Fund*, 718 F.2d 628, 632 (4th Cir. 1983) (citing 29 U.S.C. §§ 1382, 1399).

Further, "[i]f the employer disputes either the fact or the amount of its liability, it has the right to

negotiate the matter with the plan's sponsor . . . and if it is unsuccessful, it (as well as the plan's

sponsor) has the right to invoke arbitration." *Id.* (citing 29 U.S.C. §§ 1399(b)(2)(A), 1401(a)).

If the employer does not dispute the amount, "the amount assessed by the plan sponsor as

withdrawal liability 'shall be due and owing on the schedule set forth by the plan sponsor,' which

may then 'bring an action in a State or Federal court of competent jurisdiction for collection.'"

*Plumbing Servs.*, 791 F.3d at 441 (citing 29 U.S.C. § 1401(b)(1)). And "[i]n such a circumstance,

an employer is deemed to have waived review of all issues concerning the determination of

withdrawal liability." *Id.*

A "default" is the "the failure of an employer to make, when due, [withdrawal liability

payments], if the failure is not cured within 60 days after the employer receives written notification

5

from the plan sponsor of such failure" or "any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability." 29 U.S.C. § 1399(c)(5)(A), (B). And, "[i]n the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." *Id.*

In denying Plaintiffs' initial motion for default judgment, the Court explained that Plaintiffs had not adequately explained why, given that Defendants had disputed the amount due and initiated arbitration, Defendants were liable for the full amount. (ECF No. 52 at 6.) Plaintiffs have now satisfactorily addressed this issue in their briefing.

As Plaintiffs explain, Section 11.28 of the Fund's Rules and Regulations provide that the Fund "may declare a default" where "[a]ll or substantially all of the Control Group Employer's assets are sold, distributed, or transferred out of the jurisdiction of the courts of the United States" or where "[o]ther events affecting the Control Group Employer that indicate a substantial likelihood that the Control Group Employer will be unable to pay its Withdrawal Liability." (ECF No. 53-4 at 17.) Plaintiffs provide evidence that these conditions have been met, including statements from Mr. Hansen that "Hansen Ventures has zero assets and approximately $15k in credit card debt" and that "Lettermen systematically disposed of all assets during the time period and ended with $300 in a checking account and approx $20k in credit card debt." (ECF No. 53-6.) Mr. Hansen has also confirmed that Lettermen Signage has no assets or ability to pay the outstanding interim payments or its full withdrawal liability and that the company is unable to pay for arbitration and uninterested in proceeding with arbitration. (ECF No. 53-8.) This sufficiently

6

reflects an "event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability." 29 U.S.C. § 1399(c)(5)(B).

And, despite Defendants' initial request for arbitration, it is now clear that arbitration has been halted due to Defendants' inability to pay and disinterest in proceeding in that forum. Further, the Court finds persuasive the case law cited by Plaintiffs that provides that "a plan . . . may find an employer in default and demand immediate payment of withdrawal liability notwithstanding the pendency of plan review or arbitration." *Gesualdi v. Scara-Mix, Inc.*, Civ. No. 14-765 (JS) (AKT), 2017 WL 9485710, at *14 (E.D.N.Y. Feb. 7, 2017).

Thus, Lettermen is liable for the full withdrawal liability in the requested amount of $349,914.00.

Plaintiffs also argue that Hansen Ventures is jointly and severally liable for the withdrawal amount due to their "common control." The Court agrees.

Under the MPAA, "all employees of trades or businesses . . . which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301(b). And relevant regulations:

> in turn, define one type of "single employer" as a "brother-sister group of trades or businesses under common control." 26 C.F.R. § 1.414(c)–2(c)(1). These are two or more businesses where "(i) the same five or fewer persons . . . own . . . a controlling interest in each organization, and (ii) taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such organization, such persons are in effective control of each organization." *Id.* A "controlling interest" in a corporation is defined as "ownership of stock possessing at least 80 percent of total combined voting power of all classes of stock entitled to vote of such corporation or at least 80 percent of the total value of shares of all classes of stock of such corporation." *Id.* § 1.414(c)–2(b)(2)(i)(A). "Effective control" of a corporation is defined as ownership of stock "possessing more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of such corporation." *Id.*

7

*Asbestos Workers Loc. 24 Pension Fund v. NLG Insulation, Inc.,* 760 F. Supp. 2d 529, 540–41 (D. Md. 2010). Plaintiffs allege that, during the relevant period, "Mr. Hansen's ownership of Defendants Letterm[e]n and Hansen Ventures was at least 80%." (ECF No. 14 ¶ 40.) Thus, Plaintiffs have sufficiently alleged that Hansen Ventures and Lettermen were under common control for purposes of liability under the MPPAA.

Accordingly, Lettermen and Hansen Ventures are jointly and severally liable for withdrawal liability in the requested amount of $349,914.00.

**B.    Damages & Fees**

In an action such as this one where judgment is awarded in favor of the plan, "the court *shall* award the plan" the following:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>> (i) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2) (emphasis added). Thus, Plaintiffs are entitled to an award of each of the above-listed categories of damages and fees.

**1.    Damages**

As discussed above, Plaintiffs are entitled to the full withdrawal liability amount of $349,914.00. *See* 29 U.S.C. § 1132(g)(2)(A) (providing that the court shall award "unpaid contributions"); 29 U.S.C. § 1399(c)(5)(A) (providing that upon a default, a fund is entitled to "immediate payment of the outstanding amount of an employer's withdrawal liability").

With respect to the interest, the Court previously explained that Plaintiffs had not provided sufficient detail regarding its request. (ECF No. 52 at 7–8.) Plaintiffs now seek $60,779.58 in interest and $38.35 per day from September 4, 2025 (the date Plaintiffs filed their pending Motion), and provide additional detail regarding their request for interest. (*See* ECF No. 53-5.) The Court agrees that this request is appropriate, and Plaintiffs will be awarded the amount they seek. *See* 29 U.S.C. § 1132(g)(2) (providing that the court shall award interest on unpaid contributions and that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26"); 29 U.S.C. § 1399(c)(5)(A) (providing that a default entitles a fund to "accrued interest on the total outstanding liability from the due date of the first payment which was not timely made").

Liquidated damages are the greater of the interest on the withdrawal liability or "liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law)" of the withdrawal liability. 29 U.S.C. § 1132(g)(2)(C). Plaintiffs seek the latter amount (*i.e.*, 20% of the withdrawal liability), which is $69,982.80. Plaintiffs will be awarded that amount.

## 2. Attorneys' Fees

Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2)(D). Plaintiffs earlier sought fees and expenses totaling $34,383.50, but the Court explained that Fourth Circuit precedent provided that "ERISA attorney's fees [are] categorically unavailable for expenses incurred while exhausting administrative remedies." (ECF No. 52 at 8 (quoting *Rego v. Westvaco Corp.*, 319 F.3d 140, 150 (4th Cir. 2003).) "And while 'district courts have not applied *Rego*'s limitation on fee awards in ERISA cases in a way to exclude all pre-litigation fees and costs,' certain prelitigation work may not appropriately fall within the scope of

9

a fee award under 29 U.S.C. § 1132(g)." (*Id.* (quoting *Int'l Painters & Allied Trades Indus. Fund v. Interiors by Steve, Inc.*, Civ. No. JRR-21-229, 2023 WL 4446572, at *8–9 (D. Md. July 11, 2023).) The Court directed the Plaintiffs to either explain why the fees sought were recoverable, or to revise their fee request. (*Id.*) Rather than explain why the previously sought amount was recoverable, Plaintiffs have revised their fee request and now seek $26,005.00 in fees and $749.50 in expenses.

"Courts in this district apply the lodestar method to determine a reasonable award of attorney's fees under § 1132(g)." *Int'l Painters*, 2023 WL 4446572, at *5 (collecting cases). "The lodestar method calculates reasonable fees by multiplying the number of reasonable hours expended times a reasonable rate. There is a strong presumption that the lodestar figure is reasonable." *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022) (citation, quotations, and alterations omitted). The Fourth Circuit has explained that it

> has endorsed a three-part standard for use in calculating attorney's fees under the lodestar approach: First, the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate. To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). Next, the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones. Finally, the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 27 F.4th 291, 303 (4th Cir. 2022) (quoting *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013)). At the first step, to ascertain the number of reasonable hours expended multiplied by a reasonable rate, the Court applies the *Johnson* factors, which include

> (1) the time and labor expended by counsel; (2) the novelty and difficulty of the questions presented; (3) the skill required to properly perform the legal services rendered; (4) the lawyer's opportunity costs in pressing the instant litigation; (5) the customary fee for similar work; (6) the lawyer's expectations at the outset of the litigation; (7) any time limitations imposed by the client or the circumstances;

10

(8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the lawyer; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the lawyer and the client; and (12) attorney's fees awards in similar cases.

*Id.* at 303 n.7 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir. 1978)).

Plaintiffs do not address these factors in their briefing. In consideration of these factors, the Court concludes that a fee award of $19,000 is reasonable. The Court has reviewed the invoices submitted by Plaintiffs and concludes that this reduction is appropriate, particularly given that Plaintiffs have not addressed the relevant factors in their briefing, and that this Court has twice denied motions for default judgment without prejudice due to inadequacies in either the complaint or the motion. (*See* ECF Nos. 12–13, 52.) Finally, the Plaintiffs seek $749.50 in costs. These costs are reasonable and will also be awarded.

## IV.   *Conclusion*

For the foregoing reasons, Plaintiffs' Motion for Default Judgment will be granted in part. A separate Order will issue.

DATED this / 7 day of September, 2025.

BY THE COURT:

James K. Bredar
United States District Judge

11